UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALPHA DIAWARA,

                      Petitioner,

                                                               17-cr-422 (PKC)
                                                               20-cv-5095 (PKC)

        -against-

                                                                OPINION
                                                              AND ORDER

UNITED STATES OF AMERICA,

                      Respondent.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Alpha Diawara, who is proceeding pro se, moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. On April 23, 2018, Diawara pled guilty without a plea agreement to all five counts in the indictment: conspiracy to commit bank fraud, bank fraud, conspiracy to commit access device fraud, access device fraud and aggravated identity theft.[1] On October 16, 2018, the defendant was sentenced principally to 42 months' imprisonment, inclusive of the 24 months mandatory consecutive sentence on the aggravated identity theft charge. Diawara appealed his sentence, which was affirmed on appeal.

        Viewing his pro se submissions generously, Diawara asserts that his plea was not voluntary because he did not understand the proceeding and needed a French interpreter. He also asserts that his lawyer was ineffective in all respects, including failing to obtain the grand jury minutes, failing to make motions that he wanted him to bring and inadequately representing him at sentencing.

---

[1] Prior to his plea, he received a written statement of the government's views on the application of the sentencing guidelines to his case, pursuant to United States v. Pimentel, 929 F.2d 1029 (2d Cir. 1991).

DIAWARA'S CHANGE OF PLEA.

Diawara was arrested on certain of the charges on August 9, 2017. A superseding indictment was filed on August 22, 2017. (Doc. 27.) At the outset of the April 23, 2018 change-of-plea proceeding, the Court explained what would transpire and informed the defendant what he should do if he did not understand any aspect of the proceeding:

> THE COURT: I'm going to ask you certain questions and inform you of certain rights. If I ask you something or I tell you something and you don't quite understand, please let me know, and I'll put it into different words. Also, if at any point in today's proceeding you wish to speak in private with your lawyer Mr. Branden, I'll give you an opportunity to do so. Do you understand all that?
>
> THE DEFENDANT: Yes, sir.

(Plea Tr. 2-3.) Diawara had no difficulty in understanding the Court's questions and responding appropriately:

> THE COURT: All right. How do you feel today?
> THE DEFENDANT: I feel good.
> THE COURT: Is your mind clear?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand what's happening?
> THE DEFENDANT: Yes, Judge.

(Plea Tr. 4.) He indicated that he had spoken to his lawyer "numerous times" and was asked, specifically, if he was satisfied with his lawyer's representation of him and answered: "Very satisfied, Judge." (Plea Tr. 4-5.) The Court conducted a thorough inquiry compliant with Rule 11, Fed. R. Crim. P. (Plea Tr. 5-13.)

With respect to Diawara's allocution to the five separate counts, his lawyer explained that he met with his client and that the defendant and divided "his statement" into two parts, corresponding to Counts One and Two, for the first part, and Counts Three through Five,

- 3 -

for the second part; counsel requested that the defendant be permitted to read from the statements. The Court responded as follows:

> THE COURT: . . . Mr. Diawara, you should not allow anyone to put words in your mouth. I only want to hear from you what is the truth, the whole truth, and nothing but the truth. Do you understand that?
>
> THE DEFENDANT: Yes, Judge.
>
> THE COURT: All right. So tell me what happened. You may refer to your notes.

(Plea Tr. 15.) With regard to the aggravated identity theft, which is a focus of his motion, he stated:

> [I]n January and February 2017, in the Bronx, I also helped my wife Cherell Taylor by completing – by typing a online application of – of a credit card that she have sent in to our old address, which was my home address in the Bronx. And the credit card application that was typed was her former boss name and date of birth. And he did not give us permission to do so.

(Plea Tr. 16.)

At sentencing, Diawara had no objection to the facts set forth in the Pre-Sentence Report (the "PSR"). (Sentencing Tr. 3.) The PSR stated that "During the course of the offense, six checks belonging to FJA and totaling $107,789.57 were unlawfully obtained and deposited into accounts owned by TAYLOR and DIAWARA, and in some cases, the funds were then withdrawn." (PSR ¶ 26.) The offense conduct with regard to aggravated identity theft, while not succeeding in causing a loss, was deliberate and aimed at one person: Diawara's wife's boss. Diawara assisted his co-defendant and wife to open at least 10 credit cards in the boss's name, utilizing the boss's social security number and date of birth, and also used his American Express card. (PSR ¶¶ 20-22.) Diawara had ten prior convictions and while on pre-trial release was arrested for depositing a stolen check in his bank account, resulting in his remand. (Doc. 82 & 88.)

I. Claims Relating to Sentencing are Both Procedurally Barred and Meritless.

Diawara makes claims that he was treated more harshly than his wife in sentencing because of his immigration status. He further urges that he should have received a reduced sentence because he was not eligible to serve the last six months in a half-way house because of his immigration status and would likely be placed in immigration detention. Diawara appealed his sentence and it was affirmed on appeal. Generally, claims not raised on direct appeal may not be raised in a section 2255 petition. Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007). No claim is made that appellate counsel for Diawara was ineffective in the selection of issues to be presented on appeal or their manner of presentation and argument.

Even if the sentencing-related claims were not procedurally barred, they are meritless. His co-defendant, who is a U.S. citizen, received the identical 18 months of imprisonment on Counts One, Two, Three and Four to run concurrently that he received. In the exercise of prosecutorial discretion, his co-defendant was offered a plea agreement that did not require her to plead guilty to Count Five, the aggravated identity theft charge. Diawara, who had multiple prior convictions, was not offered the same plea agreement and pled guilty to Count Five without benefit of a plea agreement. It was Count Five that carried the mandatory consecutive term of 24 months.

His lawyer was not ineffective in connection with sentencing. He brought to the Court's attention Diawara's immigration status and likely deportation and urged that it would produce harsh consequences to his client, including possibly death upon return to his native country. (Doc. 96 at 7.) The Court was well aware at the time of sentencing that the Bureau of Prisons is charged with determining the place of imprisonment and that it was highly unlikely that a person facing deportation would be placed in a halfway house. The same is true of the

near certainty of immigration detention awaiting deportation; it is a collateral consequence of conviction well-known to the Court. Counsel made the strategic choice to focus on points relevant to this specific sentencing rather than generic points common to all persons who are removable by reason of a conviction. There was no prejudice to the Diawara because the Court took the entirety of his circumstances into account in sentencing.

> II.  Petitioner's Claims Related to the Voluntariness of His Plea
>      Are Both Procedurally Barred and Meritless.

Generally, claims not raised on direct appeal may not be raised in a section 2255 petition. Zhang, 506 F.3d at 166. For a claim related to the voluntariness of a guilty plea that "has not been presented on direct review, the procedural default bar may be overcome only where the petitioner establishes either (1) 'cause' for the failure to bring a direct appeal and 'actual prejudice' from the alleged violations; or (2) 'actual innocence.'" Id. (quoting Bousley v. United States, 523 U.S. 614, 622 (1998); see also United States v. Pipitone, 67 F.3d 34, 38 (2d Cir. 1995) ("A party who fails to raise an issue on direct appeal and subsequently endeavors to litigate the issue via a § 2255 petition must 'show that there was cause for failing to raise the issue, and prejudice resulting therefrom.'") (quoting Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993)). "To satisfy the cause requirement, the petitioner must show circumstances external to the petitioner, something that cannot be fairly attributed to him." Zhang, 506 F.3d at 166 (internal quotation marks omitted).

Diawara makes no claim of "cause" and the closest he comes to a claim of "actual innocence" is the assertion that he did not commit aggravated identity theft. The gist of his assertion is that he did not personally know his wife's boss and it was his wife, rather than he, who had access to the boss's information. The present claim is inconsistent with his sworn statement at his plea allocution in which he explained that he assisted his wife in completing the

credit card applications, which with guilty knowledge is sufficient to render him guilty of the crime. It is of no legal consequence that his wife was offered a plea agreement that did not require her to enter a guilty plea to aggravated identity theft.

If Diawara had demonstrated "cause" or a plausible claim of "actual innocence" sufficient to preserve his claim, the assertion that his guilty plea was not knowing or voluntary would fail on the merits. At the conclusion of the plea allocution, the Court found as follows: "Based upon your responses to my questions and my observations, I find that you know your rights, you know the consequences of pleading guilty, and there is a factual basis for your plea of guilty." (Plea Tr. 18.) At no time during the plea allocution (or the subsequent sentencing proceeding) did Diawara display any difficulty in understanding the proceedings because of language or otherwise.[2] He exhibited no inability or confusion in answering the Court's questions and repeatedly affirmed that he understood what was communicated to him.

He makes a vague claim of coercion by his lawyer that if he did not plead guilty, he would face up to 30 years of imprisonment. But by pleading guilty to bank fraud, Diawara did face a maximum sentence of 30 years' imprisonment and he was so informed at the time of his plea. (Plea Tr. 7. ) The Court explained and Diawara expressed his understanding that "any prediction, calculation or estimate that anyone has made to you as to what sentence I might give you is not binding on me, not binding on the Court, and if it turns out to be wrong, you will not be permitted to withdraw your guilty plea." (Plea Tr. 12-13.) In fact, Diawara received only 18 months on the bank fraud count concurrent with all other counts except aggravated identity theft.

---

[2] Diawara's language proficiency is demonstrated by his thoughtful remarks at sentencing. (Sentencing Tr. 7.)

III.     Petitioner's Ineffective Assistance of Counsel Claims Are Meritless.

Diawara's claims regarding ineffective assistance of counsel are not procedurally barred by his failure to make a direct appeal, as "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." Massaro v. United States, 538 U.S. 500, 509 (2003).

Strickland v. Washington, 466 U.S. 668 (1984), requires a two-part showing to establish ineffective assistance of counsel.  First, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.  To be considered ineffective, the attorney's performance must fall below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 687-88.  "Second, the defendant must show that the deficient performance prejudiced the defense." Id. at 687.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688.  Moreover, "a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy. . . ." Massaro, 538 U.S. at 501.

With the exception of the assertion that counsel failed to obtain the transcript of the grand jury proceeding, Diawara's ineffective assistance claims are vague and non-specific. See Otero v. Eisenschmidt, No. 01 Civ. 2562 (HB), 2004 U.S. Dist. LEXIS 22439, at *109 n.61 (S.D.N.Y. Nov. 8, 2004) (quoting Parnes v. United States, No. 94 Civ. 6203 (MJL), 1995 U.S.

Dist. LEXIS 18881, at *3 (S.D.N.Y. Dec. 21, 1995)) ("Vague allegations do not permit the Court to conclude that the alleged errors of Petitioner's counsel fell below 'prevailing professional norms' . . . .").

With regard to Diawara's belief that counsel should have obtained the transcript of the grand jury proceedings, it was a reasonable judgment on the part of his counsel not to seek its production. Whatever the practice may be in state court, a defendant in federal court has no right to inspect the grand jury transcript, absent a non-speculative particularized need. There are no facts present in this case that would have provided counsel with a non-speculative basis to assert a particularized need and any such application would have been properly denied. See, e.g. United States v. Arrington, No. 15-cr-33-A, 2021 WL 5369824, at *8 (W.D.N.Y. Nov. 18, 2021) (defendant not entitled to inspect grand jury minutes without producing concrete allegations of government misconduct.); United States v. Parnas, No. 19-cr-725 (JPO), 2021 WL 2981567, at *5 (S.D.N.Y. July 14, 2021) (grand jury proceedings are accorded a presumption of regularity, dispelled only upon particularized proof of irregularities); United States v. Helbrans, No. 19-cr-49701(NSR), 2021 WL 2873800, at *18 (S.D.N.Y. July 8, 2021) (same). It was not objectively unreasonable not to seek the grand jury minutes, and Diawara was not prejudiced by his counsel's failure to do so because any such effort by counsel was doomed.

CONCLUSION.

The Court has considered the entirety of the arguments presented in Diawara's motion and supplemental submission, including those not directly addressed herein. Diawara's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Clerk is directed to close the case captioned Diawara v. United States, 16 Civ. 05095 (PKC).

Diawara has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

*P. Kevin Castel*
United States District Judge

Dated: New York, New York
November 29, 2021

COPY MAILED TO:

Alpha Diawara
Reg. No. 79396-054
Moshannon Valley Correctional Facility
Unit C-3
555 GEO Drive
Philipsburg, PA  16866